OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



April 28, 1999

The Honorable Ken Armbrister
Chair, Criminal Justice Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

The Honorable Bill Ratliff
Chair, Finance Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. JC-0037

Re: How a school district should determine that a design/build contract will provide the school district with the best value for purposes of Education Code section 44.031(a), and related questions (RQ-870)

Dear Gentlemen:

You ask a series of questions concerning competitive bidding or procurement requirements, if any, that may apply to school district contracts under chapter 44, subchapter B of the Education Code. Section 44.031, part of subchapter B, generally requires a school district to contract for all purchases valued at $25,000 or more in the aggregate for a twelve-month period using the purchasing method, of eight listed in the statute, that provides the best value to the school district. You raise the following issues:

1. How does a school district determine that a design/build contract provides the "best value" to the school district and must it follow competitive procurement requirements to let a design/build contract?

2. With respect to a construction contract valued at more than $15,000, must a school district comply with Local Government Code sections 271.021 through 271.030, which provide for competitive bidding on certain public-work contracts, in addition to any requirements in Education Code sections 44.031 through 44.051, which pertain to school district purchases and contracts?

3.     Must an interlocal contract entered on behalf of a school district be competitively bid?

4.     If a school district participates in a cooperative purchasing program, as provided in Local Government Code sections 271.081 through 271.083, must the school district follow competitive procurement procedures?

Chapter 44, subchapter B of the Education Code governs a school district's purchases and contracts. Section 44.031 particularly regulates a school district's purchasing contracts "valued at $25,000 or more in the aggregate for each 12-month period," unless the contract is for the purchase of produce or vehicle fuel. TEX. EDUC. CODE ANN. § 44.031(a) (Vernon Supp. 1999). In general, a school district must enter such a contract using the method, of eight listed methods, that provides the district with the "best value":

(a) Except as provided by this subchapter, all school district contracts, except contracts for the purchase of produce or vehicle fuel, valued at $25,000 or more in the aggregate for each 12-month period shall be made by the method, of the following methods, that provides the best value to the district:

(1) competitive bidding;

(2) competitive sealed proposals;

(3) a request for proposals;

(4) a catalogue purchase as provided by Subchapter B, Chapter 2157, Government Code;

(5) an interlocal contract;

(6) a design/build contract;

(7) a contract to construct, rehabilitate, alter, or repair facilities that involves using a construction manager; or

(8) a job order contract for the minor repair, rehabilitation, or alteration of a facility.

*Id.* (footnotes omitted).

Section 44.031 establishes a bifurcated process for letting a contract, separating the selection of a purchasing method from the ultimate award of a contract using the chosen method. Under subsection (a), a district first must evaluate which of the eight listed purchasing methods will provide the best value. Then, after the district has chosen the purchasing method it will use, it is to adhere to the procedures applicable to that purchasing method. *Accord* Tex. Att'y Gen. Op. No. DM-387 (1996) at 3 (stating that once school district has determined that competitive bidding will provide best value, school district then must begin competitive bidding process). Subsequent provisions in chapter 44, subchapter B provide some procedures for procurement and criteria for selecting a vendor with respect to particular purchasing procedures. *See* TEX. EDUC. CODE ANN. §§ 44.031(b), .035, .037, .038, .039, .040, .041 (Vernon Supp. 1999). In the absence of specific procurement procedures or evaluation criteria, the district may evaluate vendors' submissions using the criteria listed in section 44.031(b):

(1) the purchase price;

(2) the reputation of the vendor and of the vendor's goods or services;

(3) the quality of the vendor's goods or services;

(4) the extent to which the goods or services meet the district's needs;

(5) the vendor's past relationship with the district;

(6) the impact on the ability of the district to comply with laws and rules relating to historically underutilized businesses;

(7) the total long-term cost to the district to acquire the vendor's goods or services; and

(8) any other relevant factor that a private business entity would consider in selecting a vendor.

With this background, we turn to your specific questions.

## I. Determining that a design/build contract constitutes the "best value" under Education Code section 44.031(a)(6) and awarding design/build contracts

You ask how a school district determines that a design/build contract provides the "best value." Section 44.031 does not define the term "best value." Nor does it or any other provision in chapter 44, subchapter B of the Education Code prescribe the method by which a school district is to determine which purchasing method will afford the district the best value. Section 44.031(b) expressly lists factors for "determining *to whom* to award a contract." TEX. EDUC. CODE ANN. § 44.031(b) (Vernon Supp. 1999) (emphasis added). Determining to whom to award a contract is

different than determining which type of contract will afford the best value. Accordingly, section 44.031(b) does not purport to define how a school district is to determine which purchasing method affords it the best value, although these factors indeed may be relevant.

Because nothing in the statutes expressly defines or directs a school district in determining best value, we conclude that a school district should establish, by rule, its own procedure and criteria to determine the purchasing method that will provide the best value in a particular instance. Section 44.031(d), authorizing a school district to adopt rules and procedures for the acquisition of goods or services, encompasses the power to adopt rules governing the procedure by which a school district will evaluate the eight possible purchasing methods. *See id.* § 44.031(d) (Vernon 1996). The criteria listed in section 44.031(b) may be relevant to determining the purchasing method that will provide the best value and could inform a district's decision in choosing one type of contract over another. *See id.* § 44.040(c) (Vernon Supp. 1999) (stating that criteria established by school district for determining bidder offering best value to school district may include criteria in section 44.031(b)).

Assuming that a school district properly has determined that a design/build contract will provide the best value, you also ask whether a school district must competitively procure a design/build contract. *See id.* § 44.031(a)(6). You suggest that a school district should use a combination of competitive bidding with requests for proposal on professional services when awarding a design/build contract so as not to circumvent the Professional Services Procurement Act, TEX. GOV'T CODE ANN. ch. 2254, subch. A (Vernon 1999); *see id.* § 2254.001 (naming act), which prohibits competitive bidding on professional services contracts. We conclude that a school district selecting the design/build purchasing method must comply with section 44.036 of the Education Code, which effectively adopts a mechanism for competitive procurement—but not competitive bidding—of design/build contracts, and that compliance with section 44.036 does not conflict with the Professional Services Procurement Act.

The Professional Services Procurement Act forbids a school district to competitively bid a contract for "professional services," which term is defined as the following services: (1) accounting; (2) architecture; (3) land surveying; (4) medicine; (5) optometry; (6) professional engineering; or (7) real-estate appraising. *See id.* §§ 2254.002(2)(A) (Vernon 1999) (defining "professional services"), 2254.003(a) (forbidding competitive bidding for professional services); *see also* Tex. Att'y Gen. LO-96-117, at 1 (noting that contract for professional services may not be competitively bid). With respect to a contract for the professional services of an architect, professional engineer, or land surveyor—three professions we imagine are most likely involved in a design/build contract—a school district must:

> (1) first select the most highly qualified provider of those services on the basis of demonstrated competence and qualifications; and

> (2) then attempt to negotiate with that provider a contract at a fair and reasonable price.

TEX. GOV'T CODE ANN. § 2254.004(a) (Vernon 1999). A professional-services contract entered in contravention of the Professional Services Procurement Act is "void as against public policy." *Id.* § 2254.005. Prior attorney general opinions have concluded that, under the Professional Services Procurement Act, a contract for the construction of a public work may not be awarded on the basis of competitive bids if architectural or engineering services comprise part of the contract. *See* Tex. Att'y Gen. Op. No. JM-1189 (1990) at 4, 5; Tex. Att'y Gen. LO-98-060, at 10-11; LO-96-117, at 1.

Section 44.036 of the Education Code effects a competitive procurement scheme for design/build contracts that differs from competitive bidding. Section 44.036 requires a school district to prepare two items in connection with each project: a request for qualifications and a design criteria package. *See* TEX. EDUC. CODE ANN. § 44.036(d) (Vernon Supp. 1999); *see also id.* § 44.036(a)(3) (defining "design criteria package"). The request for qualifications must contain information to assist a design/build firm that wishes to submit a proposal for the project, such as "general information on the project site [and] . . . scope, budget, special systems, [and] selection criteria . . . ." *See id.* § 44.036(d). The design criteria package includes more detailed information about the project, *see id.*, such as a legal description and survey of the site; requirements for interior space, special materials, special equipment, quality assurance, site development, and parking; material quality standards; time schedules, applicable codes and ordinances; and provisions for utilities. *See id.* § 44.036(a)(3). The district or its representative, using a two-phased process, must first narrow the list of finalist-offerors to no more than five and then select the proposal that will provide the best value to the district:

> (1) In phase one, the district shall evaluate each offeror's experience, technical competence, and capability to perform, the past performance of the offeror's team and members of the team, and other appropriate factors submitted by the team or firm in response to the request for qualifications, except that cost-related or price-related evaluation factors are not permitted. . . . The district shall qualify a maximum of five potential offerors to submit additional information regarding technical proposals, implementation, and costing methodologies in response to a formal request for proposals based on the design criteria package.

> (2) In phase two, the district shall evaluate offerors on the basis of demonstrated competence and qualifications, considerations of the safety and long-term durability of the project, the feasibility of implementing the project as proposed, the ability of the offeror to meet schedules, costing methodology, or other factors as appropriate. . . . The district shall select the design-build firm that submits the proposal offering the best value for the district.

*Id.* § 44.036(e). Once the district has selected a design/build firm, section 44.036(f) requires the "winning" firm's engineers or architects to complete the design and, prior to or concurrently with beginning construction, to submit all design elements "for review and determination of scope compliance by the district's engineer or architect."

The requisites of section 44.036(e) of the Education Code are not inconsistent with the requisites of the Professional Services Procurement Act, sections 2254.001 - .005 of the Government Code. The two phases of the evaluation process established in section 44.036(e) both are relevant to weighing the qualifications of the various offerors, which a public entity must do under section 2254.004(a)(1) of the Government Code. Section 44.036(e) of the Education Code therefore instructs a school district how it must fulfill section 2254.004(a)(1) of the Government Code. After the school district has completed the two-phased analysis section 44.036(e) of the Education Code sets forth and thereby selected, "on the basis of demonstrated competence and qualifications," TEX. GOV'T CODE ANN. § 2254.004(a)(1) (Vernon 1999), the design/build firm submitting the proposal offering the best value to the district, the school district must "attempt to negotiate with that provider a contract at a fair and reasonable price," *id.* § 2254.004(a)(2). Should the negotiations fail, the school district should attempt to negotiate with the second most highly qualified offeror selected under section 44.036(e) of the Education Code. *See id.* § 2254.004(c). Given this construction harmonizing section 44.036 of the Education Code and the Professional Services Procurement Act, it is our opinion that a school district opting to proceed with a design/build contract can and must comply with both statutes.

## II.    Competitive bidding on construction contract

You next ask whether, when a school district lets a construction contract, it must comply with sections 271.021 through 271.030 of the Local Government Code ("chapter 271, subchapter B"), which prescribe competitive bidding for a contract requiring an expenditure greater than $15,000 to construct, repair, or renovate a structure, road, highway, or other improvement or addition to real property. *See* TEX. LOCAL GOV'T CODE ANN. § 271.024 (Vernon Supp. 1999). This office has concluded that a school district deciding under section 44.031 to competitively bid a contract governed by chapter 271, subchapter B of the Local Government Code must comply with the competitive bidding procedures articulated there. *See* Tex. Att'y Gen. Op. No. DM-387 (1996) at 3.

Although we believe Attorney General Opinion DM-387 correctly interpreted the law as it existed at the time the opinion was issued, its conclusion has been superseded by the 1997 adoption of section 44.040 of the Education Code. *See* Act of May 29, 1997, 75th Leg., R.S., ch. 1179, sec. 2, § 44.040, 1997 Tex. Gen. Laws 4533, 4538. Under section 44.040, a school district *may* competitively bid a contract to construct, rehabilitate, alter, or repair a facility, and if it chooses to

do so, may bid the contract without complying with Local Government Code chapter 271, subchapter B in its entirety:

> (a) Except to the extent prohibited by other law and to the extent consistent with this subchapter, a school district *may use competitive bidding* to select a contractor to perform construction, rehabilitation, alteration, or repair services for a facility.
>
> (b) Sections 271.021, 271.022, 271.026, 271.027(a), and 271.0275-271.030, Local Government Code, apply to a competitive bidding process under this section.
>
> (c) A school district shall award a competitively bid contract at the bid amount to the bidder offering the best value to the district according to the selection criteria that were established by the district. The selection criteria may include the factors listed in Section 44.031(b).

TEX. EDUC. CODE ANN. § 44.040 (Vernon Supp. 1999) (emphasis added).

Section 44.040 does two things. First, it permits, but does not require, a school district to competitively bid a contract for construction services. Second, if a school district chooses to competitively bid the contract, section 44.040 directs which sections of the Local Government Code apply to the bid process. Because subsection (b) explicitly lists those sections of Local Government Code chapter 271, subchapter B that "apply to a competitive bidding process under" section 44.040, the sections not listed—*i.e.*, sections 271.024, 271.025, and 271.027(b)—do not apply. Where the competitive bidding statutes would require compliance with all provisions of chapter 271, subchapter B, section 44.040 of the Education Code would not. If the procedures mandated by chapter 271, subchapter B conflict with chapter 44, subchapter B of the Education Code, the Education Code prevails. *See id.* (citing Educ. Code § 44.031(e)).

With the enactment of section 44.040, Attorney General Opinion DM-387 has been superseded by statute to the extent the opinion is inconsistent with the current section 44.040. We now conclude that a school district may competitively bid a contract to construct, rehabilitate, alter, or repair a facility, but it is not required to do so under section 44.040. When choosing to competitively bid a construction contract, a school district must comply with all provisions of chapter 271, subchapter B of the Local Government Code except sections 271.024, 271.025, and 271.027(b).

## III.    **Interlocal Cooperation Contracts**

Your last two questions concern cooperative purchasing methods. You first ask whether an interlocal contract entered on behalf of a school district must be competitively bid. We conclude that

neither the Education Code nor the Interlocal Cooperation Act, chapter 791 of the Government Code, require it.

Nothing in section 44.031of the Education Code mandates that a school district require a representative contracting on the district's behalf to competitively procure the contract. Subsection 44.031(a) lists an interlocal contract as a purchasing method a school district may select as an alternative to a contract made by the competitive procurement methods listed. In addition, while section 44.031(b) lists factors a school district may consider in selecting the vendor to whom to award a particular contract, the list is optional and does not necessarily apply to the individual or entity purchasing goods or services on the school district's behalf in an interlocal contract. We find nothing else in the Education Code that obligates a school district to insist that goods or services purchased for the district through an interlocal cooperation contract be competitively procured.

Nor does the Interlocal Cooperation Act, which allows a school district to contract with another local government, the state, or a state agency to purchase goods or services, require competitive bidding. See TEX. GOV'T CODE ANN. § 791.025(a) (Vernon Supp. 1999). The Interlocal Cooperation Act does not require a local government to impose competitive procurement methods on the local government's representative who purchases goods or services on the local government's behalf. To the contrary, the Interlocal Cooperation Act could be construed to permit parties to choose not to competitively bid a contract for the purchase of services if one of the local governments that was a party to the contract was not required to competitively bid such a contract. See id. § 791.012 (Vernon Supp. 1999) ("Local governments that are parties to an interlocal contract for the performance of a service may, in performing the service, apply the law applicable to a party as agreed by the parties.").

A school district may, of course, direct its agent to competitively procure the contract, but state law does not require it to do so. A school district also may require its agent to evaluate the vendors' submissions using the criteria listed in section 44.031(b) of the Education Code, but the school district again is not required to do so. Finally, we note that federal law may impose competitive procedures on the purchase in certain circumstances. See 34 C.F.R. § 80.36(d) (1998) (setting policies and procedures for procurement made with federal funds). State law, however, does not.

IV.    **Cooperative purchasing program**

Lastly, you ask whether a school district that participates in a cooperative purchasing program under chapter 271, subchapter F of the Local Government Code must follow competitive procurement procedures to satisfy the "best value" requirements section 44.031(a) of the Education Code imposes.

At the outset, we note that it is not clear that school district purchases under a local cooperative purchasing program are subject to section 44.031 of the Education Code. A school district's contract under chapter 271, subchapter F of the Local Government Code is not squarely

a contract "valued at $25,000 or more in the aggregate" for purposes of section 44.031(a) of the Education Code. Instead, a contract under chapter 271, subchapter F of the Local Government Code is a contract with other local governments or a local cooperative organization, whereby a school district (or other local government) agrees to participate in a cooperative purchasing program. *See* TEX. LOC. GOV'T CODE ANN. § 271.101(1), (2) (Vernon Supp. 1999) (defining "local cooperative organization" and "local government," respectively). Under section 271.102(a) of the Local Government Code, a school district may participate in a cooperative purchasing program by "sign[ing] an agreement with another participating local government or local cooperative organization" that the school district will:

> (1) designate a person to act under the direction of, and on behalf of, that local government in all matters relating to the program;

> (2) make payments to another participating local government or a local cooperative organization or directly to a vendor under a contract made under this subchapter, as provided in the agreement between the participating local governments or between a local government and a local cooperative organization; and

> (3) be responsible for a vendor's compliance with provisions relating to the quality of items and terms of delivery, to the extent provided in the agreement between the participating local governments or between a local government and a local cooperative organization.

*Id.* § 271.102(b). Accordingly, the nature of the agreement contemplated under the local cooperative purchasing program does not obviously fall within the scope of section 44.031 of the Education Code.

While it is not obvious that a local cooperative purchasing program agreement falls under section 44.031, there is practical and intuitive logic that such agreements are covered by section 44.031. As local cooperative purchasing programs have as their sole function procuring goods and services, such agreements may be "school district contracts" subject to section 44.031. Construed in this light, cooperative purchasing programs are a kind of interlocal contract, which section 44.031(a)(5) explicitly permits a school district to enter if it represents the best value. Given the ambiguity in the law, the safest course for school districts to follow is to adhere to section 44.031 when evaluating whether to purchase goods and services through a local cooperative purchasing program.

Once a school district has determined that a local cooperative purchasing program will afford the district the best value, it need not follow any specific competitive procurement process. Section 271.102(c) of the Local Government Code declares that a local government that purchases items through a cooperative purchasing program "satisfies any state law requiring the local government

to seek competitive bids for the purchase of the goods or services." Accordingly, any purchases made through a cooperative purchasing program necessarily are deemed to be the result of competitive procurement.

Your questions and our answers demonstrate the complexity of the law relating to school district contracts. It is our opinion that section 44.031 of the Education Code does not require competitive procurement methods for all school district contracts. To the extent that you, as active participants in the Seventy-fourth Legislature's efforts to overhaul the Education Code, intended something different, we hope this opinion helps you determine whether the current language accomplishes your goals.

## S U M M A R Y

Under section 44.031 of the Education Code, a school district may establish by rule a procedure to select the one purchasing method, of the eight listed in that subsection, that will provide the best value to the school district. The district should use the procedure it adopts to determine when a design/build contract will provide it with the best value. When a district determines that a design/build contract will provide the best value to a school district, the district must award the contract in accordance with both section 44.036 of the Education Code and section 2254.004(a) of the Government Code.

Attorney General Opinion DM-387 (1996) has been superseded to the extent it is inconsistent with section 44.040 of the Education Code. With respect to a contract to construct, rehabilitate, alter, or repair a facility, a school district may, but is not required to, competitively bid the contract. If it competitively bids the contract, the school district must comply with all provisions of the competitive bidding statutes in chapter 271, subchapter B of the Local Government Code except sections 271.024, 271.025, and 271.027(b).

An interlocal contract executed on behalf of a school district need not be awarded on the basis of competitive procurement methods unless the school district requires it.

A school district may use the cooperative purchasing method, provided in chapter 271, subchapter D of the Local Government Code, to purchase items. Contracts made through a cooperative purchasing program are deemed to comply with state laws requiring

competitive bidding so that a school district need not undertake separate competitive purchasing procedures.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General